UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VIENGXAI SIHAKET,

Petitioner,

v.

WARDEN OF THE GOLDEN STATE ANNEX ICE DETENTION FACILITY, et al.,

Respondents.

Case No.  1:26-cv-00891-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS[1]

(Doc. 1)

FIVE (5) DAY OBJECTION PERIOD

Petitioner Viengxai Sihaket, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the Golden State Annex Detention Facility in McFarland, California, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241, docketed on February 2, 2026.  (Doc. 1, "Petition").  To the extent discernable, the Petition raises the following claims for relief: (1) his continued detention violates the due process clause of the Fifth Amendment because there is not a significant likelihood he will be removed in the reasonably foreseeable future; (2) any attempt by Respondents to remove him to a third country would be in violation of the Fifth Amendment due process clause, the Eighth Amendment, 8 U.S.C. § 1231, the Convention Against Torture, and the Administrative Procedure

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

Act; and (3) his continued detention violates the Fifth Amendment due process clause, 8 C.F.R. § 241.13, and the Administrative Procedures Act.  (*Id*. at 13-18).  As relief, the Petition seeks, *inter alia*, immediate release from custody, and an Order that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process.  (*Id*. at 19).

In response, Respondents argue (1) Petitioner's order of supervisions was revoked after ICE determined he could be removed in the reasonably foreseeable future in accordance with 8 C.F.R. § 241.13, including a notice of revocation and informal interview "to respond to the reasons for revocation stated in the notification," (2) Petitioner has failed to prove he will not be removed in the reasonably foreseeable future, and (3) Petitioner lacks standing to challenge a third-country removal because ICE is not currently seeking to remove him to a third country. (Doc. 11).  On March 27, 2026, Petitioner filed a reply arguing (1) Respondents have not met their burden to show a significant likelihood that he may be removed in the reasonably foreseeable future, (2) his re-detention without a pre-deprivation hearing is a violation of his due process rights under the Fifth Amendment, and (3) ICE did not properly follow its own regulations under 8 C.F.R. § 241.13 in revoking his order of release.  (Doc. 14 at 4-10).

The undersigned recommends the district court grant the Petition as to Claim One for the reasons set forth below.[2]

## I. BACKGROUND

Petitioner is a citizen of Laos who was admitted to the United States as a refugee in June

---

[2] Considering the Court's conclusion that Respondents failure to comply with § 241.13 resulted in a violation of Petitioner's due process rights (claim one), and recommendation that Petitioner be immediately released, the Court need not address in detail Petitioner's additional due process and statutory claims for relief, which are unavailing.

Specifically, to the extent Petitioner asserts a due process violation on the absence of an initial informal interview under 8 C.F.R. § 241.13(i)(3), this claim is unsupported, as the record reflects Petitioner was afforded an initial interview.  (Doc. 11-3 at 3).  Further, although Petitioner includes a claim for relief concerning third-country removal, Petitioner does not allege that such removal is at issue in this case. (Doc. 1 at 15-16).  Respondents represent that no third-country removal is being pursued, and Petitioner fails to establish Article III standing for such a claim.  (Doc. 11 at 6-7 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (to establish Article III standing, a party must allege an injury that is "concrete and particularized," "actual or imminent," and likely to be "redressed by a favorable" judicial decision)).

1980.  (Doc. 11-1 at 2; Doc. 14 at 3 (noting his mother fled Laos into Thailand when petitioner was three years old)).  In 1993, Petitioner was convicted of vehicle theft in violation of California Vehicle Code § 10851, and in 1995 he was convicted of shooting at an inhabited dwelling in violation of California Penal Code § 246 and sentenced to five years in prison.  (Doc. 11-1 at 3).  On July 22, 1997, Petitioner was ordered removed from the United States to Laos pursuant to a final order of removal.  (Doc. 1 at 2; Doc. 11-1 at 3, 15)

On November 18, 1997, the Embassy of the Lao People's Democratic Republic determined it is "authorized to deliver a travel document only to a person who is holder of a passport issued by the government of Lao P.D.R.  Therefore, [Petitioner] cannot be granted a travel document to return to Laos."  (Doc. 11-2 at 3).  On October 15, 1998, Petitioner was released on an Order of Supervision.  (*Id*. at 2).

On January 5, 2026, Petitioner's Order of Supervision was revoked, an administrative warrant was issued, and Petitioner was arrested during his check-in at the Fresno ERO Sub-office.  (Doc. 11-1 at 2-3; Doc. 11-3).  On the same date, Petitioner was provided with a Notice of Revocation of Release indicating that his Order of Supervision has been revoked after a determination of "changed circumstances" in his case and informing Petitioner he will be held in ICE custody "as there is a significant likelihood of removal in the reasonable future"; and Petitioner was given an informal interview to afford him the opportunity to respond to the reasons for the revocation of his Order of Supervision.  (Doc. 11-3).

On January 8, 2026, ICE requested a travel document from the government of Laos.  (Doc. No 11-4 at 2, ¶ 9).  Petitioner is currently detained at the Golden State Annex Detention Facility.  (Doc. 1 at 2).  On April 17, 2026, Petitioner filed an Order of the Immigration Judge ("IJ") dated March 25, 2026 granting a stay of removal effective until the determination of his motion to reopen or motion to reconsider.  (Doc. 16).  The Court's *sua sponte* search of the Executive Office for Immigration Review ("EOIR") website indicates Petitioner's motion to reopen IJ jurisdiction was denied on April 7, 2026.[3]

---

[3] *See* EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/ (last visited May 6, 2026).  The Court may take judicial notice of information on official government websites.

3

## II. APPLICABLE LAW AND ANALYSIS

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As pertinent here, "district courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### A. Statutory and Regulatory Framework

The detention, release, and removal of noncitizens who are subject to a final order of removal is governed by 8 U.S.C. § 1231. Pursuant to § 1231(a), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period') …. If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." § 1231(a)(1), (3); *see also* § 1231(a)(6) (certain inadmissible or criminal aliens, or those who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period under certain conditions, and "if released, shall be subject to the terms of supervision in paragraph (3)."). Pursuant to this mandate, regulations set forth in 8 C.F.R. § 241.13 and § 241.4 govern the release on supervision, and the revocation of release, of aliens subject to a final order of removal.

Title 8 C.F.R. § 241.13 reflects the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States

---

*McClure v. Ives*, 2010 WL 716193, at *3 (E.D. Cal. Feb. 26, 2010); *see also United States v. Basher*, 629 F.3d 1161, 1165 (9th Cir. 2011) (taking judicial notice that Bureau of Prisons' inmate locator available to the public).

lacked a repatriation treaty with the receiving country." *Prieto-Romero*, 534 F.3d at 1062 (citing *Zadvydas*, 533 U.S. at 684-86).  The Court held that detention under § 1231(a)(6) is limited to a presumptively reasonable period of six months, after which a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701.  Accordingly, under § 241.13(i), release may be revoked if an alien violates the conditions of their release, or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i) (1)-(2).  "Where, as here, petitioner was issued a final order of removal, detained, and subsequently released and then re-detained, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed" pursuant to 8 C.F.R. § 241.13. *Martinez v. Bondi*, 2025 WL 3650477, at *3 (E.D. Cal. Dec. 16, 2025) (collecting cases); *Huang v. Albarran*, 2026 WL 279888, at *4 (E.D. Cal. Feb. 3, 2026); *see also Vu v. Noem*, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025) ("The phrase 'significant likelihood,' as used in the regulation, requires something more than a mere possibility.").  Moreover, the regulations require ICE to notify the alien "of the reasons for revocation of his or her release" and to

> conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(3).

**B. Analysis**

In his first ground for relief, Petitioner argues his re-detention and continued detention violates his due process rights because Respondents have not met their burden to show there is a significant likelihood he will be removed in the reasonably foreseeable future.  (Doc. 1 at 13-14; Doc. 14 at 4-7).  In response, Respondents argue "Petitioner has not met his burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably

foreseeable future" either at his informal interview or in the Petition. (Doc. 11 at 5). Respondents additionally contend that Petitioner will be removed in the reasonably foreseeable future because in June 2025 Laos began issuing travel documents to Laotian citizens ordered removed from the United States. (*Id.* at 5-6 (citing news articles documenting removal flights to Laos in 2025, including those with criminal histories); Doc. 11-4 at 2, ¶ 12).

It is undisputed that at the time of his re-detention Petitioner was on release under an Order of Supervision dated October 15, 1998. (Doc. 11-2 at 2). This type of release is made only after determination that "the alien would not pose a danger to the public or a risk of flight." 8 C.F.R. § 241.13(b)(1). Thus, under § 241.13(i), Petitioner's release may be revoked if an alien violates the conditions of their release, or "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." § 241.13(i)(2). Respondents offer no argument or evidence that Petitioner violated the conditions of his release. As to "changed circumstances," the "Notice of Revocation of Release" ("Notice") includes the conclusory statement that the decision to revoke Petitioner's Order of Supervision was revoked "based on a review of your official alien file and a determination that there are changed circumstances in your case. ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you." (Doc. 11-3). While not included in the Notice, Respondents argue in their response that the relevant "changed circumstance" evincing a significant likelihood Petitioner will be removed in the reasonably foreseeable future is the "evolving relationship between Laos and the United States," namely, that the Laotian government started issuing travel documents to its citizens ordered removed from the United States starting in June 2025. (Doc. 11 at 5-6). In support of this argument, Respondents submit the declaration of a deportation officer who works on "the docket for Laotian detainees" that removals to Laos are "currently common," she has requested "many" travel documents for Laotian citizens from the government of Laos and none of the requests have been denied, and she has not received any requests for more information about a Laotian subject due to a travel document not being issued. (Doc. 11-4 at 2, ¶ 12).

As an initial matter, Respondents erroneously maintains it is Petitioner's burden to

6

provide "good reason to believe" there is no significant likelihood of his removal in the reasonably foreseeable future. (Doc. 11 at 5 (citing *Zadvydas*, 533 U.S. at 701)). As discussed *supra*, it is well-settled that where, as here, a Petitioner is issued a final order of removal, detained, released on an Order of Supervision, and then re-detained, it is ICE's burden to show that on account of changed circumstances there is a significant likelihood that the alien may be removed pursuant to 8 C.F.R. § 241.13. *See Martinez*, 2025 WL 3650477, at *3 (collecting cases); *Ghiassi v. Murray*, 2026 WL 622184, at *4 (E.D. Cal. Mar. 5, 2026) (citing *Escalante v. Noem*, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications."). Thus, the Court must determine if Respondents met their burden to show a significant likelihood that Petitioner may be removed to Laos.

Here, the only "changed circumstance" identified by Respondent is that Laos started issuing travel documents to its citizens ordered removed from the United States starting in June 2025. (Doc. 11 at 5-6). In support of this argument, Respondent cites four news articles documenting "removal flights" to Laos since June 2025, including aliens with criminal history. (*Id*. at 6). However, courts have consistently held that "citing a general change in a country's policy of accepting removable aliens is insufficient to prove a material change of circumstances." *Vo v. Albarran*, 2026 WL 177796, (E.D. Cal. Jan. 22, 2026); *Huang*, 2026 WL 279888, at *7 (noting courts have rejected similar evidence as insufficient); *Bandith v. Noem*, 2026 WL 657728, at *3 (E.D. Cal. Mar. 9, 2026) (noting the government's argument that this type of determination can be supported by "evidence showing a general change in a country's policy" has been "repeatedly rejected"). This is particularly relevant here, as citing a general policy does not account for Petitioner's individual circumstances including a criminal history, the fact that he fled Laos into Thailand as a young child, and evidence travel documents could not be issued back in 1997 at least in part because Petitioner did not have a passport issued by the government of Laos. (Doc. 14 at 3; Doc. 11-2 at 3). *Liu v. Carter*, 2025 WL 1696526, at *1-2 (D. Kan. June 17, 2025) ("a bare assertion of an increase [in removals to China] did not make petitioner's removal any more likely without addressing the particular obstacles to the many past failed attempts to remove

him.").

Respondents also submit the declaration of deportation officer Mayra Gallenkamp attesting that travel documents were requested on January 8, 2026 and the government has not denied any requests since October 2025 (Doc. 11-4 at 2); however, Respondents offer no evidence regarding the total number of requests for travel documentation, and the percentage of requests granted under circumstances akin to Petitioner such that a change in policy might demonstrate changed circumstances. *See Phouvieng K. v. Andrews,* 2025 WL 3265504, at *6 (E.D. Cal. Nov. 24, 2025) (finding the same deportation officer's declaration does not establish a significant likelihood of petitioners removal to Laos in the reasonably foreseeable future as "the statement that 'ICE has successfully removed aliens with final orders of removal to Laos' does not establish the frequency or likelihood of any such removals to Laos or identify any considerations the Government of Laos might take into account when deciding whether to issue a travel document for petitioner."); *see also Hoac v. Becerra*, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *Liu*, 2025 1696526, at *2); *Huang*, 2026 WL 279888, at *7. "Accordingly, respondents do not show that the initiation of the travel document process alone constitutes a changed circumstance such that there is not a significant likelihood that [P]etitioner will be removed in the reasonably foreseeable future." *Vue v. Warden of the Golden State Annex Detention Facility*, 2026 WL 482673, at *3 (E.D. Cal. Feb. 20, 2026).

Finally, as argued by Petitioner, "Respondents do not explain why ICE has been unable to remove Petitioner for the past 28 years, but it appears to be because ICE was unable to obtain travel document for him or his removal [was] otherwise not practicable." (Doc. 14 at 5). The history of previous efforts to remove an alien is a factor ICE is directed to consider in determining whether there is a significant likelihood of removing them in the reasonably foreseeable future. 8 C.F.R. § 241.13(f); *see Phouvieng K.,* 2025 WL 3265504, at *6 (noting respondents do not explain why they have been unable to remove petitioner to Laos for the past thirteen years); *Ghiassi*, 2026 WL 622184, at *6 (finding past difficulties in obtaining travel documents suggest that removal is not reasonably foreseeable); *Hoac*, 2025 WL 1993771, at *4 (E.D. Cal. July16, 2025) ("Respondents have not provided any details about why a travel document could not be

8

obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around.").  Again, Respondents only offer the general argument that Laos agreed to accept citizens ordered removed from the United States in June 2025; however, as noted above, they do not offer evidence specifically as to why Petitioner's Order of Supervision was revoked in January 2026, nor do they address evidence that their previous request for travel documents was denied, at least in part, based on Petitioner's lack of a valid passport.  Moreover, as of the date of this order, and despite their attestation that travel documents were requested from Laos on January 8, 2026, ICE has not obtained a travel document for Petitioner despite having detained him over four months ago on January 5, 2026.  "An undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely." *Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1165 (E.D. Cal. Nov. 7, 2025).

For the foregoing reasons, Respondents fail to demonstrate changed circumstances such that there is a significant likelihood that Petitioner will be removed to Laos in the reasonably foreseeable future.  *See* § 241.13(i). "While the government has significant discretion to enforce immigration laws, it must do so consistent with the requirements of its own regulations and the Due Process Clause." *Huang*, 2026 WL 279888, at *7.  "ICE, like any agency, 'has a duty to follow its own federal regulations.  As here, where an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute … and [ICE] fails to adhere to it, the challenged [action] is invalid." *Nguyen v. Hyde*, 2025 WL 1725791, at *5 (D. Mass. June 20, 2025) (quoting *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017); *see also Yan-Ling X.*, 813 F. Supp. 3d 1157 at 1166.  Because Respondents failed to comply with their own regulations in making the determination to revoke his release, Petitioner was re-detained in violation of his due process rights.  *See, e.g., Vang v. Warden of Golden State Annex Detention Facility*, 2026 WL 694111, at *6 (E.D. Cal. Mar. 12, 2026); *Ghiassi*, 2026 WL 622184, at *5-6.

Accordingly, it is hereby **RECOMMENDED:**

The Petition for Writ of Habeas Corpus (Doc. 1) be **GRANTED** as follows:

1. Respondents be directed to IMMEDIATELY release Petitioner from DHS custody on

9

the same conditions as his most recent Order of Supervision.

2. Respondents be ENJOINED from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines there is a significant likelihood of petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

## NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the urgency of a preliminary injunction, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.**  *Id*.; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    May 7, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

10